## Erick W. Dexter *vs.* William Manley.

In a lease for years of real estate, comprising a factory, water power, tools, machinery and apparatus, for carrying on a particular branch of manufacture, there is an implied covenant, on the part of the lessor, that the lessee shall have the free and peaceable enjoyment of the premises during the term, so as to enable him to make use thereof for the purposes for which they are intended, without any interruption or disturbance by the lessor.

In a declaration on the covenant for quiet enjoyment implied by law in a lease for years, the covenant is sufficiently described, if it be stated according to the legal effect of the instrument.

Where a lease for years of a factory, with water power, tools, machinery and apparatus for the manufacture of pails, contained a reservation in favor of the lessor of one room in the factory, and the privilege of running a turning lathe and saw therein during the term; and the lessee brought an action of covenant broken against the lessor, for a misuse of the power reserved to him by the lease; it was held, that the covenant was sufficiently described in the declaration, by an averment that " the defendant covenanted with the plaintiff, that he should have the peaceable and quiet possession and use of the estate and property so leased to him for and during the term aforesaid; " and that a breach was sufficiently assigned by an allegation that the defendant " has used saws and machinery in the room so reserved to himself in such a manner as to deprive the plaintiff of the use of

Dexter *v.* Manley.

the part of the building and shop so leased to him, and in such a manner that he cannot operate the said machinery and tools, in the manner and for the purpose for which they were designed, to wit, for the manufacture of pails."

The lessor, in a lease for years of a building, water power and machinery, for the manufacture of pails, having reserved to himself one room in the building, together with the privilege of running a turning lathe and saw therein: In an action by the lessee against the lessor, for making use of the room and privilege reserved by him, in such a manner as to obstruct and interrupt the lessee in the use of the demised premises, it was held: (1.) That the reservation must be so construed as to enable the lessee to carry on his factory; (2.) that evidence of the mode, in which the water power reserved had been previously used, was admissible to show a reasonable limitation of the right reserved, and that it was for the jury to determine, whether the saw used by the lessor required more power than was included in the reservation; (3.) that the damages were not to be estimated by the amount of the rent, or of the lessee's profits, but according to the value of the lease; (4.) that on the question of damages, the lessee might prove the condition and capacity of his works for the manufacture of pails, the cost of making them, and their price at the shop and in the market; (5.) and that in reference to this inquiry, the testimony of a manufacturer in another place, whose works and business were similar to those of the lessee, was admissible.

The plaintiff, in an action on a covenant implied in a lease for years, for the quiet enjoyment of the premises, without interruption by the lessor, if he recover a sum in damages not exceeding twenty dollars, is entitled to no more costs than one quarter part of the sum recovered in damages, unless the title to real estate is concerned in such action.

THIS was an action of covenant broken, in which the plaintiff declared, that the defendant, by a certain instrument, made and executed by and between him and the plaintiff, under their hands and seals, dated the 2d of September, 1846, demised and leased to the plaintiff "certain lands and a shop thereon standing, situate in said Greenwich, then and long before used for the purpose of a pail manufactory, with a water privilege belonging thereto, together with the machinery, tools, implements and apparatus, then in said shop and used for the purpose of manufacturing pails, as aforesaid, to have and to hold the same to the said Erick, from the said 2d of September, to the 1st of April then next following; reserving to himself in and by said instrument the middle room in said shop and the privilege of running a turning lathe and saw in said room; and the said William did, then and there, among other things, covenant with the plaintiff, that he should have the peaceable and quiet possession and use of the estate and property so leased to him, for and during the term aforesaid." The

plaintiff then averred, " that the said William his covenant aforesaid hath not kept but hath broken, in this : That he the said William has used saws and machinery in the room so reserved to himself, in such a manner as to deprive the plaintiff of the use of the part of the building and shop so leased to him, and in such a manner that he cannot operate the said machinery, tools and implements, in the manner and for the purpose for which they were designed, to wit, for the manufacture of pails ; and a large amount of timber which the plaintiff had on hand, at the time of the execution of said instrument, of the value of two hundred dollars, remains unwrought ; his said business has been for a long time interrupted, to wit, from the said second day of September hitherto ; and by means of which, also, the plaintiff has been prevented from performing his contracts for the delivery of pails, which, at the time aforesaid, he had made and entered into with divers persons, and has suffered great loss thereby ; also, has been unable to employ laborers in his said business, whom he had then contracted to employ, and has been obliged to pay money for the breach of such contracts ; has been deprived of great gains and profits which would have accrued to him by the quiet and peaceable use of the premises, so leased to him as aforesaid ; and has been otherwise greatly injured and damaged by the unlawful use by the defendant of the room and machinery so by him reserved as aforesaid." The plaintiff laid his damages at the sum of five hundred dollars. The writ was dated the 27th of December, 1846.

At the trial, which was before *Byington*, J., in the court of common pleas, it appeared, that the plaintiff, on the 2d of September, 1846, being then the owner of certain real estate, comprising an establishment for the manufacture of pails and tubs, by water power, and also, a house and store connected therewith, conveyed the same to the defendant, and, at the same time, made a bill of sale to him of all the tools and machinery contained in the factory, and used in the manufacture of pails ; and that, on the same day, and as a part of the same transaction, the defendant made the lease

declared on of the house, land, factory and tools and machinery.

The following is the material part of the lease: —

" That said Manley, in consideration of the covenants hereinafter contained on behalf of the said Dexter, has demised and leased, and he does hereby demise to the said Dexter, all the real estate I bought of the said Dexter this day, except the middle south room in the shop, reserving to myself the privilege of running a turning lathe and saw in said room. I likewise lease to the said Dexter all the property except the turning lathe, that he gave me a bill of sale of this day. To have and to hold the same to him the said Dexter, until the first day of April next. And the said Dexter agrees, for the use of said property, to paint the window blinds with three coats of paint, and to paint the south end of the house with three coats of paint, and the rest of said house with two coats of paint, the paint being found by said Manley. And the said Dexter agrees, that he will, at his own expense, replace any and all of said goods, which shall be lost or carelessly or accidentally injured during said term. And the said Dexter agrees to warrant and defend all the buildings and tools from fire, that he occupies or uses, and at the end of said term, he shall give to the said Manley peaceable possession of the premises and personal property mentioned in this lease."

In the latter part of November, 1846, the defendant commenced the business of manufacturing laths in the room reserved to him by the lease, and continued engaged therein until the date of the writ. The process of making laths requires three separate operations: first, blocking off, which consists in sawing logs of from six to twelve inches in diameter, and eight feet in length, into blocks four feet long; second, planking up, which is effected by sawing these blocks into plank of two inches in thickness; and, third, splitting, which consists in sawing the plank into laths. The second and third operations occupied about half of the time taken up by the whole.

The defendant, for this business, used circular saws, at-

2 *

tached by gearing or belts to the water wheel, which carried all the machinery in the shop. He had a separate saw for each operation; for the first, a cutting off saw of twenty inches in diameter; for the second, a saw for splitting, a little larger than the first, and about twenty-two inches in diameter; and, for the third, a saw about ten inches in diameter.

There was no evidence, that the plaintiff knew that the defendant contemplated engaging in this business; but there was evidence, that he had been previously engaged therein, at Enfield, and that he took his benches and saws from Enfield to Greenwich.

The plaintiff proved, that at or before the time when the defendant commenced making laths, the plaintiff was using that part of the shop, which was leased to him, for the manufacture of pails, with the knowledge of the defendant; that the process of turning pails requires a steady power, but no more power is required in planking up for pails, than is necessary to saw through a block ten inches in length; that while the defendant was engaged in blocking off, the motion of the wheel was rendered so irregular and unsteady, as somewhat to interrupt the plaintiff's business; and that while the defendant was planking up, the plaintiff could not turn pails at all, and could do nothing with his works.

The reason of the interruption was, that it required a strong power to cut through a log, and a still stronger one to saw it lengthwise. And there was evidence, that the gate was hoisted higher for the latter work; that the moment the wheel was liberated from this labor, its speed was greatly increased, until it entered the log again, to cut a new log or plank; and that sometimes in sawing lengthwise, the plaintiff's works were stopped altogether before getting through the log.

The plaintiff notified the defendant not to use his saw in such a manner; but the defendant insisted that he had a right to do so under the reservation in his lease.

It was in evidence, on the part of the plaintiff, that before the sale of the property by him to the defendant, and the lease from the latter to the former, there was a circular saw

attached to the blocking off arbor, mentioned in the bill of sale, used for blocking off for pail staves, like the first process before described in making laths. But it appeared, that the saw was taken off in the spring of 1846; that the arbor, pillars, and platform and apparatus, which the defendant used, remained and had been there for two or three years previous; and that no other saw had been used there, in that room, prior to the sale. The saw was set in the arbor at the time of the sale.

It appeared, also, in evidence, that saws of different sizes might be attached to such an arbor, and that arbors were sc constructed that the saws used upon them might be changed with facility.

The saw was used by the plaintiff, before it was taken off, for sawing pail staves, and this work did not require so much power, or interrupt the turning of pails so much, as the process of planking up in making laths, though it was done by means of a similar arbor. There was no evidence that the defendant knew how the saw had been used, other than would appear from the facts herein stated.

In order to prove the damages occasioned by this inter· ruption of his business, and the value of his lease, the plaintiff offered evidence to show the condition and capacity of his works, the number of pails that could be made, the cost of making them, and their price at the shop and in the market. He also called a witness, who had been engaged in the manufacturing of pails for ten years in Athol, a distance of about twenty-five miles from the plaintiff's works, and who testified to the particular items of the cost of the manufacture, to the price of pails at the shops and in the market, and to the profits of the business. The process of manufacture, and the kind of pails made at the works of the plaintiff and of the witness, were similar. This evidence was objected to by the defendant, but was admitted by the court for the purposes stated.

The defendant contended, that the lease contained no covenant for quiet enjoyment; that no breach of such covenant was properly alleged in the declaration   that the

evidence was not sufficient in law to prove a breach, because the defendant had a right by his reservation to use a saw in the manner used by him; that the use of several saws, successively, only one being used at a time, was not a breach; that if the covenant was broken, the plaintiff could not recover more than at the rate of the rent reserved, which was the painting of the house, of the value of which he offered evidence; and inasmuch as the plaintiff continued to have the use of the dwelling-house and land to the end of the term, he insisted that the damages could be no more than a just proportion of the rent.

But the judge instructed the jury, that there were sufficient words in the lease to import a covenant of quiet enjoyment; that a breach of this covenant was sufficiently set forth in the declaration; that the defendant had a right, by his reservation, to use the saw, which had before been used in the room reserved, to carry on any proper business to which the property so reserved was adapted, or to use a saw of like kind, and requiring the same amount of water power, as the one that had been used there, in a manner proper and usual for carrying on such business; that the defendant had no right to draw water for any purposes of waste, but that water power for one saw, such a one as had been used, if wanted, was reserved; and that the defendant might use the arbor that was in the shop, at the time of the sale, or any other similar arbor.

The jury were further instructed, that the defendant had a right to use one saw, and there being no limitation expressed in the lease as to the time he might use it during each day, he had a right to use it, as he had occasion, in his business, during the usual hours of labor through the day; and, as he might use one saw in this manner, he might use different saws successively, at different times of the day, if he did not by so using them draw or use more water power than he did by the use of the saw he reserved the right to use.

The plaintiff contended, that it appeared by the evidence, that more power was required and used for planking up, in the second step of the process of making laths, than was

Dexter *v.* Manley.

required to block off; and that if this were proved, it would be a breach of the covenant. But the court instructed the jury, that if planking up did require more power, at the same moment, than was reserved by the lease for one saw, as explained by the court, and the power was so used at the same moment, then such use would be a breach; but if it did not require more power at the same moment, but only required more power, by means of a longer application of the power, in planking up a log of four feet long, than in cutting off one of from six to twelve inches in diameter, such use would not be a breach of the covenant.

On the question of damages, the plaintiff contended, that the injury sustained by him, being the amount of profits which he might otherwise have made, was the rule of damages. But the jury were instructed, that neither the rent reserved, nor the amount of profits, was the rule of damages; that where a lessee was entirely deprived of the use of the property leased, the rule of damages was the value of the lease, or what the property would fairly rent for; that, on this subject, the rent reserved, the amount of the business, and the profits of it, were proper evidence to be considered in estimating the damages; that there being only a partial disturbance of the plaintiff in the enjoyment of his lease, he was entitled only to a just proportion of the value of the lease, according to the extent of the injury; and that the jury should take into consideration the fact that the property was leased with the restriction expressed.

The jury returned a verdict for the plaintiff in the sum of $16·87; and the defendant thereupon alleged exceptions.

*C. P. Huntington,* for the plaintiff.

1. The lease contains a covenant for quiet enjoyment: (1.) By force of the words " demise and lease." 3 Com. Dig. 259, Covenant, A. 4; 1 Har. Dig. 708, Covenant, I.; 2 Har. Dig. 1431, Landlord and Tenant, Art. 23. (2.) By force of the words " to hold and occupy." *Ellis* v. *Welch,* 6 Mass. 246, 250. A covenant may be implied in an instrument containing express covenants. *Gates* v. *Caldwell,* 7 Mass. 68 *Pomfret* v. *Ricroft,* 1 Wms. Saund. 322.

2. The breach of the covenant for quiet enjoyment is sufficiently set forth in the declaration. 2 Greenl. Ev. §§ 236 242, 243, and notes.

3. And each breach is fully proved by the evidence. The reservation must be construed to be a reservation of such water power, machinery, lathe and saw, as had been usual in the previous occupation. *Pettee* v. *Hawes*, 13 Pick. 323. The reservation in this case is strictly an exception, being part of the thing granted; whereas a reservation proper is something not in being, but newly created and reserved. Co. Lit. 143, a; 47, a; Vin. Ab. Reservation, (A.) (R.) An exception is to be taken most strongly against the grantor. Com. Dig. Fait, E. 5; 4 Com. Dig. 167, Exception, citing 10 Co. 106, b; *Dunham & Sunderland Railway Co.* v. *Foster*, 2 Ad. & El. N. S. 940; *Bowler* v. *Wolley*, 15 East, 443. See also, as to the construction of the reservation, 1 Har. Dig. Covenant, 3; 3 Com. Dig. 269, Covenant, E. 2. By the lease of the water power, rooms, machinery and tools, the use of the water power in its accustomed mode is implied. *Pomfret* v. *Ricroft*, 1 Wms. Saund. 322, n (5); *Prescott* v. *White*, 21 Pick. 341, 342; *Fitchburg Cotton Man. Corp.* v. *Melven*, 15 Mass. 268, 271.

4. The ruling of the court on the subject of damages was correct. It was analogous to the rule in cases of eviction by paramount title, where the grantee has become seized, and the covenant is in the future; the value of the estate at the time of eviction. *White* v. *Whitney*, 3 Met. 81, 89: *Norton* v. *Babcock*, 2 Met. 510.

5. The plaintiff is entitled to full costs if the verdict is sustained. The claim was an interest in real estate. *Plympton* v. *Baker*, 10 Pick. 473, 476; *Padelford* v. *Padelford*, 7 Pick. 152.

*R. A. Chapman*, for the defendant.

1. The breach of covenant complained of is not sufficiently set forth. It should be set forth specially. *Marston* v. *Hobbs*, 2 Mass. 433; *Wait* v. *Maxwell*, 4 Pick. 87.

2. The case, as stated, shows no wrong done by the defendant. He had a right to use any saw adapted to the

arbor, and was not limited to the kind of saw previously used, which he knew nothing of. And he had a right to do any work commonly done with a circular saw. The irregular use of the power was necessarily incident to any saw. No saw can use the power continuously.

3. The rule of damages laid down by the court below is not supported by the cases in 2 and 3 Metcalf. And see *Baldwin* v. *Munn*, 2 Wend. 399, 405 ; *Kinney* v. *Watts*, 14 Wend. 38, 40 ; *Kelly* v. *Dutch Church of Scotland*, 2 Hill, 105.

4. The evidence admitted to prove damages was incompetent ; it was in violation of the rule confining the evidence to the points in issue ; 1 Phil. Ev. *c.* 7, § 3 ; and was much like that admitted in *Robbins* v. *Harvey*, 5 Conn. 335. It did not appear what rent the Athol witness paid, nor how much his profits depended on his own management.

5. As to the question of costs, the action is personal, on a personal covenant, and relating to personal property. The cases cited do not apply. See *Shurtleff* v. *Hutchins*, 10 Met. 248 ; *Hunt* v. *Hanover*, 8 Met. 343. By the last authority, if the case be of the character supposed by plaintiff, it should be dismissed for want of jurisdiction in the court of common pleas.

And to raise the question of jurisdiction, and to present more properly the question as to the declaration, the defendant filed a motion in arrest of judgment.

*Huntington*, in reply.

The defendant, by his plea, might have raised a question as to the title to real estate ; and the action is founded on an interest in real estate. The defendant in fact denies the plaintiff's right to hold and enjoy real estate in the mode claimed. As to the objection to the want of jurisdiction, the declaration discloses no claim of easement, so that no objection lies on that ground.

SHAW, C. J. This case comes before the court on exceptions taken by the defendant to the rulings and decisions of the judge, on the trial in the court of common pleas. It is in form an action of covenant, on a lease made by the defendant to the plaintiff of premises, including a shop, with a

water power attached, which had been used and appropriated for the manufacture of pails and tubs by machinery carried by water power. The facts appear to have been, that in September, 1846, Dexter, the plaintiff, was the owner of the manufactory in question, with a house and store; that on that day he conveyed the real estate, and made a bill of sale of all the tools and machinery contained in the factory and used in the manufacture of pails, to Manley, the defendant; that, on the same day and as a part of the same transaction, Manley made the lease in question of the house, land, factory, tools and machinery, to hold to the first day of the ensuing month of April; for which, instead of other rent, the plaintiff was to do on the premises certain painting described in the lease. For the course of the trial, and the instructions excepted to, reference is to be had to the bill of exceptions.

The first question is, whether this lease contains an implied covenant for peaceable and quiet enjoyment, there being none in express terms. It is unnecessary to consider whether a covenant would be implied, amounting to a warranty against incumbrances, or a paramount title, or against any rightful claims of third persons; it is sufficient for the present case, that the lease contains an implied covenant, which is a good warranty by the defendant against his own acts. Every grant of any right, interest, or benefit, carries with it an implied undertaking, on the part of the grantor, that the grant is intended to be beneficial; and that so far as he is concerned, he will do no act to interrupt the free and peaceable enjoyment of the thing granted. And we cannot conceive why this is not sufficiently set forth in the declaration. It is sufficient to declare on an instrument according to its legal effect; and if an instrument has a certain legal effect, upon its true and proper construction, such effect may and often must be expressed in terms in the declaration. It is another question, whether this declaration properly alleges special damages; we are inclined to think it does not.

But the main question is upon the terms and construction of the lease; which not being skilfully drawn, it is difficult to

derive from it the true intent and meaning of the parties. The rights which the lessor intended to confer upon the lessee by the demise, and those which he intended to retain to himself by the reservation, must be ascertained by the whole instrument taken together, the deed and bill of sale therein referred to, and the subject matter to which the lease applies.

The lease embraces all the real estate conveyed by the lessee to the lessor on the same day (except the middle south room), and also the machinery, tools and apparatus in the shop, conveyed by the bill of sale from the lessee to the lessor, reserving the right of running a turning lathe and a saw in the room excepted out of the demise. The lessee covenanted to return the tools and apparatus in good order; and, at his own expense, to replace those which should be lost or damaged. In fact, these tools and apparatus were adapted to the fixtures and water wheels, and the wh)le, with the water power, were fitted for the manufacture of pails. In effect, therefore, although the premises leased are not described as a pail factory, yet the lease is of a mill and water power, with tools and machinery, for the manufacture of pails, requiring a certain amount of power, and a mode of using it, understood by the parties. The instrument is to be construed, as far as possible, beneficially for the lessee, so as to enable him to use the premises for the purpose intended. But it must also be construed with a just reference to the exception and reservation, in favor of the lessor, of the use of one turning lathe, and one saw. The latter must necessarily have some limitation, otherwise it might be construed to mean one saw, for the sawing of boards, marble, or granite, absorbing the whole power, and thus be directly repugnant to the grant.

The parties having failed to express themselves more precisely as to this reservation, it must have a reasonable construction, so as to be consistent with the beneficial use of the pail factory by the lessee; and we think the court did not err in directing the jury, that the previous mode of using the power reserved, in the room excepted, was one means of

ascertaining the reasonable limitation of the right thus reserved.

The most questionable point in this part of the charge is, that, under the right reserved to use one saw, the defendant might use three different saws of different sizes, successively, on the same day, if he used only one at a time. This instruction is open to the consideration, that if the defendant were confined to one saw, though he might keep it running the whole of each day, yet in any business which he would be likely to carry on with one saw, it would probably be at rest a part of the time, from which the plaintiff would have a chance of benefit. But, whether this construction was correct or not, it was one which was favorable to the defendant, which he could not object to, and to which he has not taken any exception.

The question was left to the jury, whether the use of the saw, in the manner it was used by the defendant, required more power than that reserved by the lease, construing and explaining the lease as above stated; with the instruction that, if such was the case, then it was a breach of the defendant's implied covenant; and in this opinion we concur.

Much of the argument of this case turned upon the rule prescribed by the court for the assessment of damages, and the evidence admitted, as offered on the part of the plaintiff. This is not a case, in which the law fixes any precise rule of damages; being a case of partial disturbance and interruption, even if the rent of the premises had been fixed and certain. But in this case, the difficulty is greatly increased. This partial lease of a portion of the premises, for a short period, seems to have been one element in the adjustment of the purchase and sale of the real estate, and of the machinery, tools and personal property; the consideration to be paid for them; the time at which the purchaser should be put in possession; and in what condition the house should be put and left by painting. Suppose, therefore, that this particular demise had been made on the nominal reservation of the rent of one dollar; it would not be reasonable to hold, that the damages for a disturbance must be limited to one dollar.

This was therefore peculiarly a case, where the question was, what direct damage the plaintiff had sustained by it; and it seems to us that there was no error in the court, in admitting the modes of estimating the damage, and the evidence tending to establish some approximation to it, which were allowed in the present case.

We think therefore that the exceptions must be overruled, and judgment entered on the verdict for the plaintiff.

But, upon the question of costs, the court are of opinion, that the plaintiff can recover no more than one quarter as much costs as damages. This is a special action, brought to recover damages for the breach of a personal contract, in relation to a lease for years, which is a chattel interest. Besides, it nowhere appears by the record that the title to real estate came in question. The question depends on the Rev. Sts. *c.* 85, § 3, and *c.* 121, § 3, and is settled by the recent case of *Shurtleff* v. *Hutchins*, 10 Met. 248.

*Exceptions overruled.*